```
                    UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF IOWA


IN RE

NICHOLAS J. BAUER                                 Chapter 7
and KRISTEN L. BAUER

     Debtors.                              Bankruptcy No. 05-01781F

RODNEY A. SCHMIDT

     Plaintiff

vs.                                        Adversary No. 05-9110F

NICHOLAS J. BAUER

     Defendant.
```

ORDER RE MOTION FOR SUMMARY JUDGMENT

The matter before the court is plaintiff's motion for summary judgment. Plaintiff argues that issues determined in state court proceedings entitle him to judgment as a matter of law under 11 U.S.C. §§ 523(a)(4) and (a)(6). The motion should be denied. The state court ruled in plaintiff's favor on a claim for conversion and awarded compensatory and punitive damages, but it did not apply the same standard for intent necessary to hold the debt excepted from bankruptcy discharge. The state court made certain findings that may be a basis for determining that at least a portion of the debt should be excepted from debtor's discharge, but its findings were not sufficiently detailed for this court to determine the extent of any such nondischargeable debt.

Procedural History

In March 2002, plaintiff Rodney Schmidt sued defendant Nicholas Bauer and his wife Kristen Bauer in the Iowa District Court for Kossuth County.  The petition made claims for conversion and "Tortuous [sic] Interference with Prospect [sic] Business Advantage and Contract."  In May 2004, after trial, Judge Straub entered judgment against only Nicholas Bauer on the conversion claim and dismissed the business tort claim.  Judgment entered in favor of Rodney Schmidt in the principal amount of $11,050.90 plus $1,000 for punitive damages.

Bauers filed a Chapter 7 petition on April 20, 2005 (No. 05-01781F) and received their discharges on August 24.  Schmidt filed a complaint August 10, 2005 seeking a determination that the judgment debt is excepted from Nicholas Bauer's discharge under §§ 523(a)(2), (a)(4) and (a)(6).

On March 6, 2006, Schmidt filed a motion for summary judgment on the claims under §§ 523(a)(4) and (a)(6) based on issue preclusion.  Hearing on the motion was held May 10, 2006 in Fort Dodge.  Attorney Brian Miller appeared for plaintiff Schmidt.  Defendant Nicholas Bauer appeared pro se.

Attorney Miller advised the court at the hearing that Schmidt has abandoned his claim under § 523(a)(2).  Schmidt contends, however, that the state court judgment for conversion established the elements of either larceny or embezzlement under

§ 523(a)(4) and that the court's finding of legal malice in awarding punitive damages established that the debt is for willful and malicious injury under § 523(a)(6).

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c), incorporated by Fed.R.Bankr.P. 7056.  Schmidt submitted a Statement of Undisputed Facts (doc. 13) with attached copies of the state court petition, the answer, and the decision of Judge Straub.  Bauer submitted Exhibits 1-9 for the court's consideration.  This court will first summarize the state court's findings and conclusions that are relevant to Schmidt's motion.

<u>Summary of the State Court's Findings & Conclusions</u>

Rodney Schmidt owned about 200 acres of real property in Kossuth County known as the Plum Creek Farm.  He was raising elk on the property, which required specialized fencing and equipment.  He wanted to operate private game hunts, but he needed more land to comply with state law governing such activity.  He decided to sell Plum Creek to ABATE of Iowa, Inc. and to move his operation to Decatur County.

Schmidt sold the farm to ABATE on or about October 5, 2000.

The contract provided that Schmidt would be allowed to live rent-free on the farm until ABATE sold the property to a third party. ABATE agreed to give Schmidt a 30-day notice to vacate the property if it sold the farm prior to December 29, 2000. Schmidt had the right to leave his herd of about 250 elk on the farm until December 29, 2000.

On October 25, 2000, ABATE entered into a contract to sell Plum Creek to Nicholas and Kristen Bauer. Schmidt was given notice to vacate by November 30. ABATE gave the Bauers a warranty deed dated November 29, 2000; the deed was recorded December 11. When the Bauers took possession of the property, some of Schmidt's elk and elk handling equipment were still on the property.

A dispute arose regarding items left on the farm. The contract between Schmidt and ABATE stated: "It is agreed that this sale includes all fixtures and fencing, gates, satellite dish and accessories. Bulk bin is excluded from the sale." (Decision at 2.) Schmidt "believed that the interior fences and gates were part of the elk business and that he therefore had the right to take them with him." (Id.)

On one occasion, presumably in October 2000, Nicholas Bauer walked around the property with Schmidt. Schmidt pointed out property and indicated that he intended to take certain items and "some of" other items (id. at 3). The Bauers both "testified

4

that they believed they had purchased the property 'as is,'
including most of the personal property left behind" by Schmidt
(id. at 21).

> During the late winter and spring of 2001, [Schmidt]
> attempted to contact the Bauers about removing his
> property, but was unsuccessful. Whenever he went to
> the property, the front gate was locked. On May 1,
> 2001, [Schmidt] came to the farm again to pick up his
> property. [Mr. Bauer] refused to surrender any of the
> property and instead he had [Schmidt] arrested for
> trespassing.

(Decision at 7.)

At about this same time, Schmidt met with the deputy sheriff
and made a list (trial exhibit 13) of what he claimed was his
property. The deputy sheriff then had a telephone conversation
with Bauer. Bauer "agreed to come to the sheriff's office to
return some items," although he was "not very happy because so
much time had passed since he had taken possession" of the
property (decision at 7). Another list was prepared (trial
exhibit 14), indicating the items that were returned during the
spring of 2001.

In late July 2001, the elk handling squeeze chute was still
in the Bauers' yard. That summer, Mr. Bauer sold several items
of equipment. He received $3,500 for the squeeze chute and a
hydraulic pump. He sold a "five-pen alley" and 50-60 "corral
panels" for $5,000 (decision at 8).

Schmidt introduced four exhibits itemizing the property at
issue: Exhibits 11, 13, 14, 15. (None of the four were submitted

5

on the motion for summary judgment.)  Some of these exhibits conflicted with other evidence, and the court was presented with a "challenge" to determine whether particular items had been returned or sold.  <u>See</u> Decision at 9, 11.  Neither party's position as to what was included in the sale was completely correct.  The court ruled against Schmidt as to the front entry gate to the farm and logos welded to the gate; they were part of the real estate (<u>id.</u> at 4).  The court did not believe the Bauers' claim that they had purchased the property "as is." Nicholas Bauer was present in October 2000 on a walk-through of the property when Schmidt pointed out items that he claimed were his personal property (<u>id.</u> at 9).  The court concluded that Bauer had converted the following items of Schmidt's property:

```
Squeeze chute, hydraulic pump, five-pen alley,
   elk handling panels                              $10,500.00
Running gear                                            250.00
Pry bars                                                 50.00
Chain binders                                            75.90
Cast iron cauldron                                      175.00

Total                                               $11,050.90
```

(Decision at 13.)  The court assigned an aggregate value to the first four items in excess of the amount Bauer received from their sale after considering several factors (<u>id.</u>).

The court awarded Schmidt $1,000 as punitive damages. Bauer's conduct constituted legal malice, which is "established by showing wrongful conduct committed with a willful or reckless disregard for the rights of another."  (<u>Id.</u> at 19.)  The court

6

made this statement regarding the evidence of legal malice:

> Although there is some evidence of [Bauer's] good intentions, such as his meeting with [Schmidt] to attempt to negotiate a settlement of this dispute, there is also evidence to the contrary such as his failure to show up for other meetings and especially his selling some of the converted property after having admitted to Deputy Sheriff Kollasch and others that he knew it belonged to [Schmidt]. Refusing to return the converted property to [Schmidt] after he admitted that it belonged to [Schmidt] and then selling it is certainly a showing of wrongful conduct committed with a willful or reckless disregard for [Schmidt's] rights.

(Id. at 18-19.)

The court concluded that Bauer's conduct "was directed specifically at [Schmidt] so that the full amount of punitive damages should be paid to [Schmidt]" pursuant to Iowa Code § 668A.1 (id. at 19).

## Discussion

A creditor in bankruptcy may establish the elements of a § 523 claim through issue preclusion after litigation in state court. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991). Four elements must be present to apply issue preclusion:

    1.  the issue sought to be precluded must be the same as that involved in the prior action;
    2.  the issue must have been litigated in the prior action;
    3.  the issue must have been determined by a valid and final judgment; and
    4.  the determination must have been essential to the prior judgment.

Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane), 124 F.3d 978, 983 (8th Cir. 1997). Schmidt claims that the findings

7

in the state court litigation established the elements of larceny, embezzlement, and willful and malicious injury to property for purposes of 11 U.S.C. § 523.

Larceny is the wrongful taking of property from the rightful owner with fraudulent intent to convert the property to the debtor's own use. Kaye v. Rose (Matter of Rose), 934 F.2d 901, 903 (7th Cir. 1991); Dynamic Food Service Equipment, Inc. v. Stern (In re Stern), 231 B.R. 25, 26 (S.D.N.Y. 1999). Embezzlement is the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." First National Bank of Fayetteville, Arkansas v. Phillips (In re Phillips), 882 F.2d 302, 304 (8th Cir. 1989). Willful and malicious injury requires a showing that debtor intended the injury. Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974 (1998).

The state court decision established that Bauer sold property belonging to Schmidt and determined the extent of Schmidt's damages. Punitive damages stemming from the same conduct that gives rise to nondischargeable debt are also nondischargeable. Johnson v. Miera (In re Miera), 926 F.2d 741, 745 (8th Cir. 1991); see also Cohen v. de la Cruz, 523 U.S. 213, 118 S.Ct. 1212 (1998) ("any debt" arising from fraud is nondischargeable). Whether Schmidt is entitled to summary judgment depends on whether the state court determined that Bauer

8

sold the property with fraudulent intent or malice.  This court concludes that the state court did not decide the issue of intent under a standard sufficient to hold the debt excepted from discharge by preclusion.

The judgment for conversion, in itself, did not determine that the debt is excepted from Bauer's discharge.  Conversion is an act of "wrongful" dominion or control over another's property.  Proof of conversion does not require showing that the defendant acted with fraudulent intent.  Indeed, the state court observed that "good faith is not a defense to a conversion claim." (Decision at 10, citing Dairy Farm Leasing Co. v. Haas Livestock Selling Agency, Inc., 458 N.W.2d 417 (Minn. App. 1990)).

Nor did the court's award of punitive damages establish malice for purposes of Schmidt's claim for willful and malicious injury.  The state court determined that punitive damages were appropriate because Bauer's conduct amounted to legal malice, defined as "wrongful conduct committed with a willful or reckless disregard for the rights of another."  The Eighth Circuit has expressly rejected this standard as insufficient to establish a claim under § 523(a)(6).  Barclays American/Business Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985).  Conduct that is merely negligent or reckless does not give rise to nondischargeable debt.  A creditor must show that the debtor acted with an actual intent to cause injury.  Kawaauhau v.

9

<u>Geiger</u>, 523 U.S. at 61, 118 S.Ct. at 977.

Nevertheless, the state court's discussion of the award of punitive damages suggests that at least a portion of the debt may be nondischargeable.  The court stated that Bauer sold "some of the converted property after having admitted to [the sheriff] and others that he knew it belonged to [Schmidt]."  (Decision at 19.)  Unfortunately, the decision did not make any findings as to what constituted an admission of Schmidt's ownership, nor did it identify any items that Bauer sold after such admission.  Bauer's knowledge that Schmidt claimed certain items as his own personal property did not establish that Bauer admitted the property was Schmidt's.  Schmidt claimed certain property that was eventually determined not to be his (<u>id.</u> at 4).

Accordingly, the motion for summary judgment will be denied.  Judge Straub has determined that Bauer converted several items of property belonging to Schmidt.  The court awarded compensatory and punitive damages.  At trial of the claims under §§ 523(a)(4) and (a)(6), the burden of proof will be on Schmidt to show by a preponderance of the evidence that Bauer acted with fraudulent or malicious intent.  If he meets this burden as to some but fewer than all of the items converted, Schmidt will be required to prove damages including any relevant portion of punitive damages.

IT IS ORDERED that the motion for summary judgment is denied.  The clerk shall set a telephonic hearing to select a

date for final trial.

    DATED AND ENTERED  May 22, 2006

*William L. Edmonds, Bankruptcy Judge*